## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ANGEL HERNANDEZ,

      Plaintiff,

      v.

KEVIN MASINICK, et al.,

      Defendants.

CIVIL ACTION NO. 3:22-cv-00198

(SAPORITO, M.J.)

## <u>MEMORANDUM</u>

This federal civil rights action for damages under 42 U.S.C. § 1983 commenced when the plaintiff, Angel Hernandez, appearing through counsel, filed his original complaint on February 9, 2022. (Doc. 1.) The original complaint named two defendants: The Commonwealth of Pennsylvania and the Pennsylvania State Police (the "Commonwealth Defendants"). On June 3, 2022, Hernandez filed a four-count amended complaint, adding a third defendant: Kevin Masinick, a Pennsylvania state trooper, in both his personal and official capacities. (Doc. 13.)

The Commonwealth Defendants have filed a motion for partial dismissal of the amended complaint. (Doc. 16.) That motion is fully briefed and ripe for decision. (Doc. 17; Doc. 25-2; Doc. 28.)

Appearing separately through his own counsel, Trooper Masinick

has also filed a motion for partial dismissal of the amended complaint. (Doc. 19.) That motion is also fully briefed and ripe for decision. (Doc. 27; Doc. 32; Doc. 33.)

For the reasons set forth herein, the Commonwealth Defendants' motion will be granted, and Trooper Masinick's motion will be granted in part and denied in part.

## I.   BACKGROUND

In his amended complaint, Hernandez alleges that, on November 2, 2021, at about 7:00 p.m., he was riding his 2009 Yamaha motorbike southbound on Second Mountain Road in North Manheim Township, Schuylkill County, Pennsylvania. At the same time and on the same stretch of road, Trooper Masinick was driving an unmarked Pennsylvania state police vehicle, a 2019 Ford Explorer, northbound. Upon observing Hernandez riding his motorbike, Masinick suddenly and without warning turned on his emergency lights and intentionally drove his vehicle the wrong way into oncoming traffic on Second Mountain Road, where he intentionally and violently—or, alternatively, negligently and recklessly—struck Hernandez and his motorbike with the front of the Ford Explorer, causing serious injuries to Hernandez.

The amended complaint alleges that, when he intentionally caused the collision of vehicles, Trooper Masinick had a conscious desire to terminate Hernandez's freedom through the action of ramming the motorbike with his police vehicle. The amended complaint further alleges that, at the time of this incident, Hernandez did nothing to physically threaten Trooper Masinick or anyone else, and Hernandez was not operating the motorbike in any way that could have caused any risk of injury to himself, to any pedestrians, or to other motorists.

At the time of this incident, Trooper Masinick is alleged to have been acting within the scope of his authority and on the business of the Commonwealth Defendants as an agent, servant, workman, or employee of the Commonwealth Defendants. The amended complaint further alleges that the Commonwealth Defendants failed to adequately train or supervise their police officers with respect to the use of excessive force in stopping, detaining, or arresting individuals, including the use of police vehicles to intentionally strike other vehicles or individuals without cause or justification.

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a

defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed.

App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## III.   DISCUSSION

The amended complaint is set out in four counts. Count I asserts a § 1983 federal civil rights claim against Trooper Masinick only, alleging violations of his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.[1] Count II asserts supplemental state-law assault and battery claims against all three defendants. Count III asserts a § 1983 substantive due process claim against Trooper Masinick only, based on a "state created danger" theory of liability. Count IV asserts supplemental state-law negligence claims against all three defendants. For relief, Hernandez seeks an award of

---

[1] Count I of the amended complaint also alleged violations of the plaintiff's rights under various provisions of the Pennsylvania state constitution, but those claims have been voluntarily dismissed by the plaintiff pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure. (Doc. 15.) *See generally Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 Fed. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.") (citing *Jones v. City of Philadelphia*, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006)); *Berry v. City of Philadelphia*, 188 F. Supp. 3d 464, 477 (E.D. Pa. 2016).

compensatory and punitive damages, plus reasonable attorney's fees and costs.

## A. The Commonwealth Defendants' Motion to Dismiss

In their motion to dismiss, the Commonwealth Defendants seek dismissal of any official-capacity § 1983 claims against Trooper Hernandez under Counts I and III on the ground that such claims are barred by Eleventh Amendment immunity. They seek dismissal of the intentional tort claims against them in Count II on the ground that such claims are barred by state sovereign immunity. Finally, they argue that the plaintiff's request for punitive damages with respect to the remaining claims against the Commonwealth Defendants—the negligence claims asserted in Count IV—should be stricken because sovereign immunity bars the recovery of punitive damages from the Commonwealth Defendants. The Commonwealth Defendants do not seek dismissal of the plaintiff's negligence claims (set forth in Count IV) to the extent he seeks compensatory damages only.

### 1. Official-Capacity and Intentional Tort Claims

In his opposition brief, Hernandez concedes that dismissal of his official-capacity § 1983 claims and his state-law intentional tort claims

against the Commonwealth Defendants is appropriate. *See M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 43 F. Supp. 3d 412, 430 (M.D. Pa. 2014); *Cooper ex rel. Transp. Workers Union Local 234 v. Se. Pa. Transp. Auth.*, 474 F. Supp. 2d 720, 721 n.2 (E.D. Pa. 2007).

Accordingly, the plaintiff's § 1983 claims against Trooper Masinick *in his official capacity* (set forth in Counts I and III of the amended complaint) and the plaintiff's state-law assault and battery claims against the Commonwealth Defendants (set forth in Count II) will be dismissed with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 2. Punitive Damages

The only surviving claim against the Commonwealth Defendants is the plaintiff's negligence claim, set forth in Count IV of the amended complaint. The amended complaint demands an award of punitive damages with respect to all defendants. The Commonwealth Defendants have requested that this request for punitive damages be stricken as a against them.

Although Pennsylvania has waived its sovereign immunity with respect to certain types of state-law negligence claims against the

Commonwealth or its agencies, *see* 42 Pa. Cons. Stat. Ann. § 8522, it has explicitly limited that waiver to certain categories of *compensatory* damages only, *see id.* § 8528(c). Punitive damages simply may not be recovered from the Commonwealth or its agencies. *See Feingold v. Se. Pa. Transp. Auth.*, 517 A.2d 1270, 1276–77 (Pa. 1986).

Accordingly, the plaintiff's request an award of punitive damages will be stricken as against the Commonwealth Defendants.[2]

**B. Trooper Masinick's Motion to Dismiss**

In his motion, Trooper Masinick seeks dismissal of the plaintiff's Fifth Amendment claim, set forth in Count I of the amended complaint, on the ground that such claims are not cognizable against a state official. He also seeks dismissal of the plaintiff's Fourth Amendment unlawful seizure and false arrest claim for failure to state a claim or, alternatively, on qualified immunity or *Younger* abstention grounds. Trooper Masinick does not seek dismissal of the plaintiff's § 1983 excessive force or state-created-danger claims, nor the plaintiff's state-law tort claims.

---

[2] Our ruling on this issue does not preclude the plaintiff from recovering punitive damages from Trooper Masinick in his individual capacity, should the evidence developed through discovery support such relief.

### *1. Fifth Amendment Claim*

In his opposition brief, Hernandez concedes that dismissal of his § 1983 Fifth Amendment claim against Trooper Masinick is appropriate. *See M.S.*, 43 F. Supp. 3d at 430; *Cooper*, 474 F. Supp. 2d at 721 n.2; *see also Highhouse v. Wayne Highlands Sch. Dist.*, 205 F. Supp. 3d 639, 648 (M.D. Pa. 2016) ("It is well-established . . . that the Fifth Amendment restricts the actions of federal officials, not state actors.").

Accordingly, the plaintiff's § 1983 Fifth Amendment claim against Trooper Masinick (set forth in Count I of the amended complaint) will be dismissed with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### *2. Fourth Amendment Unreasonable Seizure Claims*

The plaintiff brings his federal claims for damages under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but

instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, a plaintiff must establish that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

In Count I of the amended complaint, the plaintiff asserts that Trooper Masinick's conduct constituted an unreasonable seizure of his person, in violation of his Fourth Amendment rights. In support, the plaintiff relies on two alternative legal theories: (1) Masinick lacked probable cause to effect the arrest or seizure of Hernandez (*i.e.*, a "false arrest" theory of liability); and (2) Masinick used unreasonable or excessive force to effect the arrest or seizure of Hernandez (*i.e.*, an "excessive force" theory of liability).

Masinick does not seek dismissal of the § 1983 excessive force claim at this stage, but he presents several arguments in support of his

contention that Hernandez has failed to state a § 1983 false arrest claim upon which relief can be granted: (a) the amended complaint fails to allege that any actual arrest occurred; (b) the seizure at issue was a traffic stop rather than an arrest, which requires only reasonable suspicion rather than probable cause; and (c) the seizure was supported by probable cause (or reasonable suspicion) based on multiple traffic citations that were subsequently filed against Hernandez. In the alternative, the defendant state trooper argues that, under *Younger v. Harris*, 401 U.S. 37 (1971), we should abstain and stay these proceedings until after the state courts enter final judgment in the plaintiff's summary traffic offense proceedings. The defendant also interposes a qualified immunity defense with respect to the plaintiff's § 1983 false arrest claim.

> ### *a.* Younger *Abstention*

We consider first the defendant's argument that we should abstain to avoid interfering with ongoing state proceedings involving several traffic citations issued to Hernandez as a result of his encounter with Trooper Masinick.

In support of his motion to dismiss, Masinick has attached copies of

state court docket sheets documenting the filing of seven separate summary traffic proceedings against Hernandez, all of which purportedly arise out of his November 2, 2021, encounter with Trooper Masinick. (Doc. 19-1.) Masinick asks us to take judicial notice of these docket sheets, which indicate that on November 24, 2021, Hernandez was charged with the following summary traffic offenses: (1) driving on a suspended or revoked license; (2) driving without insurance; (3) driving without a state inspection certificate; (4) driving without a state registration; (5) driving with unsafe tires; (6) driving without proper headlights; and (7) driving without proper taillights.

But we have consulted the publicly available court records to ascertain the current status of these proceedings, learning that all have been designated "inactive." *See, e.g.*, *Commonwealth v. Hernandez*, Docket Nos. MJ-21303-TR-0004792-2021 (Schuylkill Cty. (Pa.) Magis. Dist. Ct.). Thus, in the absence of "an ongoing state judicial proceeding," abstention is not warranted. *See ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 131 (3d Cir. 2014). Moreover, based on the factual allegations of the amended complaint and the nature of the summary traffic offenses that were charged, it does not appear that litigation of this case would

interfere with the state proceedings in any event.

####        b. *Unreasonable Seizure*

In a recent decision, the Supreme Court of the United States explained that there are two distinct types of unreasonable seizure: "seizures by *control* and seizures by *force*." *Torres v. Madrid*, 141 S. Ct. 989, 1001 (2021) (emphasis in original). "[E]ach type of seizure enjoys a separate common law pedigree that gives rise to a separate rule." *Id.*

> [A] seizure by acquisition of control involves either voluntary submission to a show of authority or the termination of freedom of movement. A prime example of the latter comes from *Brower* [*v. County of Inyo*, 489 U.S. 593 (1989)], where the police seized a driver when he crashed into their roadblock. Under the common law rule of arrest, actual control is a necessary element for this type of seizure. Such a seizure requires that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result.

*Id.* (citations and internal quotation marks omitted).[3]

---

[3] Trooper Masinick does not seek dismissal of the plaintiff's § 1983 excessive force claims. But we note the Supreme Court's ultimate holding in *Torres* that "the application of physical force to the body of a person with intent to restrain is a seizure even if the person does not submit and is not subdued." *Id.* at 1003; *see also id.* at 1001 ("[The] requirement of control or submission never extended to seizures by force."). We find it beyond dispute that, based on the allegations of the amended complaint, Trooper Masinick's ramming of his police SUV into Hernandez on his motorbike constitutes a seizure for purposes of an excessive force claim.

Here, based on the allegations of the amended complaint, the plaintiff has clearly pleaded sufficient facts to establish a seizure by control—that is, an arrest. Such a seizure occurs whenever "there is a governmental termination of freedom of movement through means intentionally applied." *Brower v. Cty. of Inyo*, 589 U.S. 593, 597 (1989); *see also Tennessee v. Garner*, 471 U.S. 1, 7 (1985) ("Whenever an officer restrains the freedom of a person to walk away, he has seized that person."). Indeed, the Supreme Court in *Brower* provided an example that closely resembles the facts alleged in this case: "If . . . the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure." *Brower*, 589 U.S. at 597; *see also Beshers v. Harrison*, 495 F.3d 1260, 1265–66 (3d Cir. 2007) (finding a seizure where evidence on summary judgment would support a reasonable factfinder's conclusion that a police officer intentionally collided his vehicle with the plaintiff's).

Trooper Masinick argues that, rather than an arrest, the incident at issue in this case falls within the "traffic stop" exception to the Fourth Amendment. As this court recently explained in another case:

- 14 -

> A well-established exception to the Fourth Amendment's warrant requirement permits an officer to conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. Accordingly, a *routine traffic stop* is constitutional when it is supported by reasonable suspicion. Reasonable, articulable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.

*United States v. Jones*, ___ F. Supp. 3d ____, 2022 WL 2911675, at *10 n.9 (M.D. Pa. July 22, 2022) (citations, internal quotation marks, and brackets omitted) (emphasis added); *United States v. Gooch*, 915 F. Supp. 2d 690, 702 (W.D. Pa. 2012) ("A *routine traffic stop* is constitutional when it is supported by reasonable suspicion.") (emphasis added).

But while the encounter alleged in the complaint literally involved both "traffic" and a "stop," it was anything but a "routine traffic stop." Hernandez and Trooper Masinick were allegedly traveling along the same roadway in opposite directions when Masinick suddenly crossed into the opposing lane of traffic and intentionally rammed the front of his police SUV into Hernandez and his motorbike, causing serious injuries to Hernandez. The "routine traffic stop" to which this exception applies "is presumptively temporary and relatively brief." *United States v. Elias*, 832 F.2d 24, 26 (3d Cir. 1987). "[T]he purpose of the stop is limited and

the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Under these circumstances, where an officer applied potentially deadly force in intentionally ramming his police vehicle into a motorbike, we find the "routine traffic stop" exception to the Fourth Amendment simply inapplicable. *Cf. United States v. Johnson*, Criminal No. 08-CR-18, 2008 WL 4287288, at *7 (M.D. Pa. Sept. 17, 2008) ("[T]he investigative detention of the taxicab in which [the plaintiff] was a passenger was not a 'routine' traffic stop. Harrisburg police blocked the cab from exiting the narrow alleyway, ordered the occupants to exit at gunpoint, and placed the driver and Johnson in handcuffs. This show of force is certainly greater than that which a driver should expect when stopped for the 'run of the mill' traffic violation.").

Finally, the defendant contends that, even if a seizure or arrest did occur, Trooper Masinick had probable cause to seize Hernandez. Masinick points to several summary traffic citations that were issued to Hernandez based on the events of their encounter. Because the amended complaint does not allege any facts regarding these traffic citations, Masinick points us to publicly available state court docket records. But these docket reports document only the filing of summary traffic citations

and the issuance of summonses to Hernandez; ultimately, the cases were designated "inactive," and no further activity was docketed. In particular, there is no entry noted in these docket sheets to indicate that a neutral judicial officer made any determination of probable cause, and the cursory information provided by these docket sheets does not articulate any facts whatsoever to support the filing of the citations. The Fourth Amendment's probable cause requirement cannot be satisfied by the mere *filing* of criminal charges. *See Kalina v. Fletcher*, 522 U.S. 118, 129 (1997); *see also Gerstein v. Pugh*, 420 U.S. 103, 117 (1975) ("[W]e do not think prosecutorial judgment standing alone meets the requirements of the Fourth Amendment."). Moreover, we note that the charging officer listed on these docket sheets was not Trooper Masinick, but another state trooper, non-party Aaron J. Sidella. Viewing these judicially noticed facts and the allegations of the amended complaint in the light most favorable to the non-moving plaintiff, we are unable to impute the charging officer's observation of these alleged traffic infractions to Masinick as well.

### c. Qualified Immunity

Trooper Masinick has also interposed the affirmative defense of qualified immunity with respect to the plaintiff's § 1983 false arrest claim

The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Pearson*, 555 U.S. at 244).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236

(permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 325–26 (3d Cir. 2009). The Third Circuit has also cautioned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 Fed. App'x 788, 791 n.3 (3d Cir. 2009) (per curiam).

For the reasons we have discussed in the preceding section, we find that the plaintiff has pleaded a plausible § 1983 false arrest claim. With respect to the second *Saucier* prong, we now find also that the constitutional right implicated was clearly established at the time of the incident, at least based on the limited factual context before us at this, the pleadings stage. Based on the pleadings alone—alleging that the defendant state trooper intentionally rammed his police SUV into the plaintiff and his motorbike head-on while both were traveling along a road in opposite directions, without any cause or justification—this may

be a case where the Fourth Amendment violation was obvious, and thus there need not be a materially similar case for the right to be clearly established. *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004); *Hope v. Pelzer*, 536 U.S. 730, 738 (2002).

But we need not decide this issue on that basis because there were materially similar cases to place a reasonable police officer on notice that the conduct alleged in this case would violate clearly established Fourth Amendment rights. The claimed violation of Hernandez's rights, asserted in his § 1983 false arrest claim, occurred on November 2, 2021. We find that three of the cases we cited in the preceding section—*Torres*, *Brower*, and *Beshers*—are materially similar to the facts underlying this action, and all three were decided well before November 2, 2021.[4]

Thus, under the circumstances presented in this case, viewing all judicially noticed facts and the allegations of the amended complaint in the light most favorable to the non-moving plaintiff, we find that Hernandez's right to be free from a police officer intentionally ramming his police vehicle into Hernandez and his motorbike head-on while both were traveling along a road in opposite directions, without any cause or

---

[4] The most recent decision, *Torres*, was decided in March 2021.

justification, was clearly established at the time of the alleged violation, and therefore Trooper Masinick is not entitled to qualified immunity with respect to Hernandez's § 1983 false arrest claim for monetary damages.

We note, however, that this determination is made based solely on the factual allegations of the amended complaint and on the publicly available state court docket records of which we have taken judicial notice at the request of this defendant. The context of this claim and any related defenses may evolve through the exchange of discovery, making it appropriate to revisit the issue of qualified immunity again on summary judgment or at trial, if supported by the evidence.

Accordingly, the motion for partial dismissal by Trooper Masinick will be denied with respect to the plaintiff's § 1983 false arrest claim, set forth in Count I of the amended complaint.

### C. Leave to Amend

The Third Circuit has instructed that, if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile, *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and

those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). The plaintiff has conceded that dismissal of his § 1983 official-capacity claims, his state-law intentional tort claims against the Commonwealth Defendants, and his § 1983 Fifth Amendment claims should be dismissed. Based upon the facts alleged in the complaint, it is clear that any amendment with respect to the plaintiff's claim for punitive damages against the Commonwealth Defendants would be futile. Therefore, our dismissal of the aforementioned claims will be *without* leave to amend.

## IV.   CONCLUSION

For the foregoing reasons, the Commonwealth Defendants' motion for partial dismissal (Doc. 16) will be granted and Trooper Masinick's motion for partial dismissal (Doc. 19) will be granted in part and denied in part. The plaintiff's § 1983 official-capacity claims, his state-law intentional tort claims against the Commonwealth Defendants, and his § 1983 Fifth Amendment claims against Trooper Masinick will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and his request for punitive damages will be deemed stricken with respect to the

Commonwealth Defendants only.

An appropriate order follows.

Dated: February 2, 2023          ***s/Joseph F. Saporito, Jr.***
                                 JOSEPH F. SAPORITO, JR.
                                 United States Magistrate Judge